GLADYS BARBARA EICHMAN *v.* J & J BUILDING
COMPANY, INC., ET AL.
(14022)

PETERS, C. J., CALLAHAN, COVELLO, HULL and BORDEN, Js.

444

Argued September 26—decision released November 13, 1990

*William C. Franklin,* for the appellant (plaintiff).

*Eugene A. Marconi,* for the appellees (named defendant et al.).

BORDEN, J. The principal issue in this appeal is whether General Statutes § 49-14[1] places an affirmative duty on the trial court to determine the fair market value of real property in a deficiency judgment

---

[1] General Statutes § 49-14 provides in pertinent part: "DEFICIENCY JUDGMENT. (a) At any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. Such motion shall be placed on the short calendar for an evidentiary hearing. Such hearing shall be held not less than fifteen days following the filing of the motion, except as the court may otherwise order. At such hearing the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim. The plaintiff in any further action upon the debt, note or obligation, shall recover only the amount of such judgment."

proceeding, when the court determines that the parties presented no credible evidence to establish that value. The plaintiff moved for a deficiency judgment following the strict foreclosure of a mortgage that secured a promissory note of the defendants.[2] The court denied the motion for a deficiency judgment because it found none of the evidence regarding the value of the mortgaged property to be credible. Based on that finding, the court concluded that the plaintiff had not met her burden of proof. From that ruling, the plaintiff appealed to the Appellate Court, and, pursuant to Practice Book § 4023, we transferred the appeal to this court. We hold that implicit in General Statutes § 49-14 is the requirement that the party seeking a deficiency judgment satisfy her burden of proof regarding the fair market value of the property as of the date title vests in her. We therefore affirm the judgment of the trial court.

The following facts are undisputed. On May 25, 1982, the defendants executed a promissory note in favor of the plaintiff in the principal amount of $30,000, with interest payable at the rate of 16 percent per annum. As security, two of the defendants mortgaged to the plaintiff an undeveloped lot located in Litchfield.[3]

In September, 1988, the plaintiff instituted mortgage foreclosure proceedings against the defendants. On August 14, 1989, the court, *Pickett, J.*, rendered a judgment of strict foreclosure and established the amount of the debt at $47,802.93, including attorney's fees and

---

[2] The defendants are the named corporate defendant, James K. Crowell, Theresa Crowell, Jay Jarmosik and Christine Jarmosik, who are the obligors on the mortgage note, and Harrison Warren, trustee, a lienor subsequent to the mortgage. Warren is not involved in this appeal. We refer herein to the named defendant, to the Crowells and to the Jarmosiks as the defendants.

[3] The property mortgaged to secure the note was owned by the defendants James K. Crowell and Jay Jarmosik.

costs. The law days for the defendants and the subsequent lienor; General Statutes § 49-19;[4] were set as September 25 and 26, 1989, respectively. Since no one redeemed, title to the property vested in the plaintiff on September 27, 1989.

On October 2, 1989, the plaintiff moved for a deficiency judgment pursuant to § 49-14 and Practice Book § 528.[5] On January 22, 1990, after several continuances requested by the parties, the trial court, *Moraghan, J.,* heard the motion for a deficiency judgment.

At the beginning of the hearing, the parties stipulated that the only issue before the court was the value of the property that was the subject of the mortgage. Additionally, the parties stipulated that $51,297.60, representing the original amount of the debt plus accrued interest, was the appropriate figure to be used to determine if a deficiency judgment was warranted.

---

[4] General Statutes § 49-19 provides: "TITLE TO VEST IN ENCUMBRANCER PAYING DEBT AND COSTS. In actions of foreclosure, when a judgment of strict foreclosure is rendered and there are subsequent encumbrances, the judgment may provide that, upon the payment of the debt and costs by any encumbrancer, after all subsequent parties in interest have been foreclosed, the title to the property shall vest absolutely in such encumbrancer making such payment, subject to such unpaid encumbrances, if any, as precede him."

[5] "[Practice Book] Sec. 528. MOTION FOR DEFICIENCY JUDGMENT

"Whenever a deficiency judgment is claimed in a foreclosure action, the party claiming such judgment shall file with the clerk of the court within the time limited by statute a written motion setting forth the facts relied on as the basis for the judgment, which motion shall be placed on the short calendar for an evidentiary hearing. Such hearing shall be held not less than fifteen days following the filing of the motion, except as the court may otherwise order. At such hearing the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim. The plaintiff in any further action upon the debt, note or obligation, shall recover only the amount of such judgment.

"Upon the motion of any party and for good cause shown, the court may refer such motion to a state referee for hearing and judgment."

The plaintiff and the defendants presented the testimony of two appraisers to establish the fair market value of the property. Both the plaintiff's expert witness, Arthur Oles,[6] and the defendants' expert witness, Fletcher Waldron,[7] used the comparable sales approach to determine the fair market value of the property. Oles valued the property at $31,000, while Waldron valued it at $60,000. Both experts were cross-examined as to the appropriateness of their valuations of the subject property. During the cross-examination of Oles, he testified that the assessed value of the property for tax purposes was $42,480, representing 70 percent of a purported fair market value of $61,200.

The court, in an oral ruling from the bench, found that neither the experts' testimony nor the evidence regarding the assessed value was credible. It ruled, therefore, that the plaintiff had not satisfied her burden of proof to establish the value of the property, and denied the motion for a deficiency judgment. This appeal followed. In a subsequent, written supplemental memorandum of decision, the court reiterated its inability to find a fair market value of the property from the evidence presented and its conclusion that, accordingly, the plaintiff had failed to meet her burden of proof.

The plaintiff claims that: (1) the court was required by General Statutes § 49-14 to determine the fair market value of the property involved in the deficiency judgment hearing; (2) the court improperly considered matters outside the record, which directly caused the court's determination that the expert testimony was not credible; and (3) the court's refusal to determine the value of the property in question was arbitrary,

---

[6] The defendants stipulated to the qualifications of the plaintiff's expert, Arthur Oles.

[7] The defendants qualified Fletcher Waldron as an expert witness.

capricious and unsupported by the facts of the case. The plaintiff's third claim is simply a variation on the theme elaborated under her first claim. We therefore consider them together. We disagree with the plaintiff's first claim as restated, but agree with her second claim. We conclude, however, that the court's improper consideration of matters outside the record was harmless.

I

The plaintiff first claims that General Statutes § 49-14 imposed a duty on the trial court to determine a value for the property that was the subject of a deficiency judgment hearing. The plaintiff does not claim that the court's factual finding, determining that the testimony of the expert witnesses was not credible, was clearly erroneous. Instead, the plaintiff argues that the court had an affirmative duty, as a matter of law under the language of § 49-14, to set a value for the property, regardless of whether credible evidence upon which to base this determination was presented at the hearing. This claim is without merit.

"[A] judgment of strict foreclosure extinguishes all rights of the foreclosing mortgagee on the underlying note, except those enforceable through the use of the deficiency judgment procedure delineated in General Statutes § 49-14." *First Bank* v. *Simpson,* 199 Conn. 368, 370, 507 A.2d 997 (1986); General Statutes § 49-1.[8]

---

[8] General Statutes § 49-1 provides: "WHEN FORECLOSURE A BAR TO FURTHER ACTION ON DEBT. The foreclosure of a mortgage is a bar to any further action upon the mortgage debt, note or obligation against the person or persons who are liable for the payment thereof who are made parties to the foreclosure and also against any person or persons upon whom service of process to constitute an action in personam could have been made within this state at the commencement of the foreclosure; but the foreclosure is not a bar to any further action upon the mortgage debt, note or obligation as to any person liable for the payment thereof upon whom service of process to constitute an action is personam could not have been made

Section 49-14 (a) provides in pertinent part that "any party to a mortgage foreclosure may file a motion seeking a deficiency judgment." At the hearing on the motion, "the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim." General Statutes § 49-14 (a). "Such a deficiency judgment, in light of § 49-1, is, therefore, the only available means of satisfying a mortgage debt when the security is inadequate to make the foreclosing plaintiff whole." *First Bank* v. *Simpson,* supra, 371; *Simsbury Bank & Trust Co.* v. *Ray Carlson Lumber Co.,* 154 Conn. 216, 219, 224 A.2d 544 (1966). "The value of the premises on the date that title becomes vested in the mortgagee determines whether the mortgagee is entitled to a deficiency judgment." *Di Diego* v. *Zarro,* 19 Conn. App. 291, 294, 562 A.2d 555 (1989).

The language at issue in this appeal provides that the trial court *"shall* hear evidence, establish a valuation for the mortgaged property and *shall* render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim." (Emphasis added.) General Statutes § 49-14. The plaintiff contends that, because the legislature used the word "shall," the statute is mandatory in nature, and the court improperly declined to establish the value of the property. Contrary to the plaintiff's argument, however, although "shall" has often been held to be mandatory; see *Farricielli* v. *Personnel Appeals Board,* 186 Conn. 198, 202–203, 440 A.2d 286 (1982); its use in this section does not mandate that the court must determine a value for a piece of property when the plaintiff has not satisfied her burden of proof by providing credible evidence.

within this state at the commencement of the foreclosure. The judgment in each such case shall state the names of all persons upon whom service of process has been made as herein provided."

In determining whether the use of the word "shall" is mandatory or directory, the test is "whether the prescribed mode of action is of the essence of the thing to be accomplished." *Vartuli* v. *Sotire,* 192 Conn. 353, 360, 472 A.2d 336 (1984); see also *LeConche* v. *Elligers,* 215 Conn. 701, 710, 579 A.2d 1 (1990). "That test must be applied with reference to the purpose of the statute." *LeConche* v. *Elligers,* supra. The plaintiff contends that the "essence" of § 49-14 is the requirement that the court determine the actual value of the real property involved, and that if this requirement is within the court's discretion, the plaintiff's right to a deficiency judgment would be subject to the whim of the court. We disagree.

" '[T]he plain object [of the deficiency judgment statute] is to require a mortgage creditor, who appropriates the property in part payment only of his debt, to apply the actual value of the security to the debt before collecting any claimed deficiency' . . . ." *People's Holding Co.* v. *Bray,* 118 Conn. 568, 571, 173 A. 233 (1934), quoting *Staples* v. *Hendrick,* 89 Conn. 100, 103, 93 A. 5 (1915); *Maresca* v. *DeMatteo,* 6 Conn. App. 691, 694, 506 A.2d 1096 (1986). Implicit in the purpose of the statute is the initial prerequisite that the plaintiff provide the court with sufficient evidence to demonstrate that she is entitled to a deficiency judgment. Indeed, this court has held, in a deficiency judgment proceeding, that "the trier may not decide an issue which is wholly unsupported by the evidence." *New Haven Savings Bank* v. *West Haven Sound Development,* 190 Conn. 60, 71–72, 459 A.2d 999 (1983).

The plaintiff's claim, at its roots, is that the trial court had a mandatory duty to arrive at some determination of value of the property despite the lack of any credible evidence upon which to determine that value. Relying on the authority of the court to arrive at a

compromise figure between those offered by expert witnesses; see *New Haven Savings Bank* v. *West Haven Sound Development,* supra, 70; *Whitney Center, Inc.* v. *Hamden,* 4 Conn. App. 426, 429, 494 A.2d 624 (1985) (tax appeal); and on the fact that § 49-14 provides the sole procedure for securing a deficiency judgment, the plaintiff argues that the court was required to do so in this case. This argument founders on the " 'elementary rule that whenever the existence of any fact is necessary in order that a party may make out his case . . . the burden is on such party to show the existence of such fact.' " *Nikitiuk* v. *Pishtey,* 153 Conn. 545, 552, 219 A.2d 225 (1966); see also C. McCormick, Evidence (3d Ed. 1984) § 337. This rule is derived from the traditional principle that in a civil case "[t]he general burden of proof rests upon the plaintiff . . . ." *Silva* v. *Hartford,* 141 Conn. 126, 129, 104 A.2d 210 (1954).

As a necessary element of her claim for a deficiency judgment, the plaintiff was required to prove that the property was worth less than the amount of the debt on the date of the vesting of title. She therefore had the burden of presenting sufficient evidence for the trial court to determine the value of the property on that date. *Silva* v. *Hartford,* supra. She failed to do so.

" 'The determination of [a property's] value by a court is the expression of the court's opinion aided ordinarily by the opinions of expert witnesses, and reached by weighing those opinions in light of all the circumstances in evidence bearing upon value and its own general knowledge of the elements going to establish it. *Appeal of Cohen,* 117 Conn. 75, 85, 166 Atl. 747 [1933].' *Lomas & Nettleton Co.* v. *Waterbury,* 122 Conn. 228, 233, 188 A. 433 (1936)." *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 196 Conn. 172, 183, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985). "[T]he determination of the

credibility of expert witnesses and the weight to be accorded their testimony is within the province of the trier of facts, who is *privileged* to adopt whatever testimony he reasonably believes to be *credible.*" (Emphasis added.) Id. "When confronted with conflicting evidence as to valuation the trier may properly conclude that under all the circumstances a compromise figure most accurately reflects fair market value." *New Haven Savings Bank* v. *West Haven Sound Development,* supra, 70; *Bennett* v. *New Haven Redevelopment Agency,* 148 Conn. 513, 515–16, 172 A.2d 612 (1961); see also *Whitney Center, Inc.* v. *Hamden,* supra.

While we have held that the trial court *may* set the property value at a compromise figure when confronted with conflicting expert testimony as to valuation; *New Haven Savings Bank* v. *West Haven Sound Development,* supra; *Whitney Center, Inc.* v. *Hamden,* supra; we have never held that the court *must* do so in the absence of any credible evidence. Indeed, in *New Haven Savings Bank* v. *West Haven Sound Development,* supra, we upheld the compromise value set by the trial court where the court, "in determining valuation . . . accepted and rejected portions of each appraiser's testimony . . . ." Thus, in that case the trial court found segments of the presented evidence credible. See also *Whitney Center, Inc.* v. *Hamden,* supra, 430 (trial court " 'accepted and rejected portions of each appraiser's testimony' " [quoting *New Haven Savings Bank* v. *West Haven Sound Development,* supra]).

Finally, the plaintiff attempts to analogize the affirmative duty of determining the value of real property applicable to a state referee in a condemnation proceeding to the fact-finding function of the trial court in a deficiency judgment proceeding. The analogy fails. The important public interest found in condemnation hearings is not present in deficiency judgment hearings. In

condemnation cases, "[t]he property owner is required to yield involuntarily to the sovereign's demand. The only question in issue is the fair value of the property seized. The single objective . . . is to ensure that the property owner shall receive, and that the state shall only be required to pay, the just compensation which the fundamental law promises the owner for the property which the state has seen fit to take for public use." *Thomaston* v. *Ives*, 156 Conn. 166, 174, 239 A.2d 515 (1968).

In condemnation hearings, the "state referee sitting as a court on appeals . . . is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of this court with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises." *Birnbaum* v. *Ives*, 163 Conn. 12, 21, 301 A.2d 262 (1972); see also *Minicucci* v. *Commissioner of Transportation*, 211 Conn. 382, 388, 559 A.2d 216 (1989). The duty imposed upon the court to set a value for the property stems from the nature of the action, namely, an involuntary taking by the state. No such important public interest inheres in a deficiency judgment proceeding, where the parties voluntarily entered into the arrangement, and where the plaintiff already possesses the property that secured the debt.

Indeed, deficiency judgment hearings more closely resemble suits for collection than condemnation hearings. *Maresca* v. *DeMatteo*, supra, 696 ("the deficiency judgment procedure is the functional equivalent of a suit upon the note"); *City Savings Bank of Bridgeport* v. *Miko*, 1 Conn. App. 30, 36–37, 467 A.2d 929 (1983) (award of attorney's fees appropriate in deficiency judgment hearing, which acts as part of the "collection pro-

cess"). In light of the different purposes underlying the two causes of action, we conclude that the trier of fact in a deficiency judgment proceeding has no analogous duty to determine value in the absence of some credible evidence as a basis therefor.

The plaintiff also argues that the trial court's refusal to set a value for the real property in the deficiency judgment hearing was arbitrary, capricious, unsupported by the underlying facts, and created a windfall in favor of the defendants. We disagree.

The plaintiff argues that, because § 49-14 is the only remedy available to a creditor after strict foreclosure, allowing the trial court to refuse to set a value to the property deprives the plaintiff of a meaningful judicial determination of her claim and, therefore, is arbitrary and capricious. The plaintiff also argues that, by affirming the trial court's decision, this court will open a "Pandora's box" where every tax appeal, condemnation appeal, and deficiency judgment hearing will result in a claim of insufficient evidence to determine a property value, and that this decision will result in appeals in all such cases.

We determine, however, that this decision does not change the present status of the law in these areas. A litigant is presently entitled to raise on appeal the issue of whether the valuation was properly supported by sufficient evidence. *New Haven Savings Bank* v. *West Haven Sound Development,* supra (claim that there was no evidence to support deficiency judgment); *Whitney Center, Inc.* v. *Hamden,* supra (claimant alleged insufficient evidence to support tax assessor's valuation). Additionally, the plaintiff incorrectly concludes that because this court has previously held that the trial court *may* use a compromise figure in setting property value; *New Haven Savings Bank* v. *West Haven Sound*

*Development,* supra; *Whitney Center, Inc.* v. *Hamden,*
supra; it was arbitrary and capricious for the court not
to do so in this instance.

"We are aware . . . that the deference given to the
trial court's exercise of discretion should not be inter-
preted as meaning that its exercise is insulated from
meaningful review." *State* v. *S & R Sanitation Services,
Inc.,* 202 Conn. 300, 312, 521 A.2d 1017 (1987). " 'Arbi-
trary' means '[w]ithout adequate determining principle
. . . not governed by any fixed rules or standard.' "
Id., quoting Black's Law Dictionary (5th Ed.). "Capri-
cious" is defined as "[c]hangeable in purpose or view;
freakish; whimsical." Ballantine's Law Dictionary (3d
Ed.). " 'Where there is room for two opinions, an action
taken after due consideration is not arbitrary or capri-
cious even though a reviewing court may believe it to
be erroneous.' " *State* v. *S & R Sanitation Services,
Inc.,* supra.

Although we might have decided the issue differently,
a review of the trial court's memorandum of decision,
as well as the evidence presented at trial, indicates that
the finding that the plaintiff provided insufficient credi-
ble evidence at trial with which to determine property
value was properly based upon the underlying facts
and, therefore, was not arbitrary or capricious. Fur-
thermore, because the plaintiff has already obtained
the mortgaged property by way of strict foreclosure,
the defendants did not receive a windfall as a result
of the trial court's decision. Any benefit the defend-
ants might have received was simply the result of the
plaintiff's failure to carry her burden of persuading the
court that she was entitled to a deficiency judgment.

II

The plaintiff next claims that the trial court improp-
erly considered matters outside the record, and that

the court's consideration of those matters directly resulted in its finding that the plaintiff's expert witness was not credible. We agree that the court should not have considered certain matters because they were outside the scope of the deficiency judgment hearing. We conclude, however, that any such error was harmless.

This claim stems from the fact that, when the court, *Moraghan, J.,* rendered its oral decision at the conclusion of the hearing on January 22, 1990, it referred to two facts: (1) the original amount of the mortgage note, in May, 1982, was $30,000; and (2) when the court, *Pickett, J.,* on August 14, 1989, rendered judgment of strict foreclosure and found the amount of the debt, Judge Pickett set what Judge Moraghan regarded as "a short law day which would suggest little equity . . . in the property." Judge Moraghan also referred, however, in addition to the testimony of the plaintiff's appraiser, to that of the defendants' appraiser and the evidence of the assessed value of the property. He then concluded that he did not find either expert credible and that he was "not comfortable with the assessed value . . . ."

The plaintiff reads the court's reference to the original amount of the mortgage debt in 1982 as an inference that the property must have been worth more than $30,000 in 1982 and, therefore, a further inference that in 1989 it must have been worth more than the $31,000 attributed to it by the plaintiff's expert. Although these inferences are not required by the court's language, they do represent a reasonable reading of the transcript. These inferences, the plaintiff suggests, were impermissible because they were based on speculation and not on any evidence produced at the hearing. The plaintiff also argues that these inferences, and any inference drawn from the length of the redemption

period as compared to the amount of the mortgage debt found in August, 1989, were irrelevant because the sole question for the court at the deficiency judgment hearing was the value of the property on September 27, 1989.[9]

We agree with the plaintiff that the court should not have drawn these inferences. Although, in deciding a claim for a deficiency judgment, the court may properly consider certain uncontested matters that were previously adjudicated in the case; see *New Haven Savings Bank* v. *West Haven Sound Development,* supra, 72 n.13 (court may rely on previous foreclosure judgment in determining debt due); that discretion does not extend to the circumstances of this case.

No inference regarding the value of the property in 1989 could logically be drawn from the amount of the 1982 mortgage debt; any such inference would be speculative. Furthermore, the value placed on the property by the court for the purposes of rendering judgment of strict foreclosure and setting law days was irrelevant to a subsequent deficiency judgment proceeding. "It is irrelevant to the determination of a deficiency under § 49-14 that the court had placed a prior value on the premises for purposes of the earlier foreclosure proceeding." *Di Diego* v. *Zarro,* supra, 295.

We are not persuaded, however, that this was harmful error. The court subsequently filed a supplemental memorandum of decision because "upon reading the transcript of its order in the . . . case, [the court] recognizes the need and urgency of filing a supplemental memorandum in view of the condition of that transcript." In this memorandum of decision, the court

---

[9] We note, however, that any inference the court may have drawn from the short redemption period would inure to the plaintiff's benefit, because it would mean that little or no equity existed in the property and, therefore, would have tended to support the plaintiff's claim for a deficiency.

reiterated its opinion that it did not find credible the evidence presented to it. The supplemental decision contains no suggestion that the court's ultimate lack of confidence in the experts' credibility was affected in any way by either the original amount of the note or the length of the redemption period. Indeed, in the supplemental decision the court did not even refer to the original amount of the note and did not repeat its characterization of the length of the redemption period. Although a trial court may not alter its initial findings by way of a further articulation; see *Koper* v. *Koper,* 17 Conn. App. 480, 484, 553 A.2d 1162 (1989); we do not regard the court's supplemental memorandum of decision as having done so. In view of that supplemental decision, we conclude that the plaintiff has not carried her appellate burden of establishing that the error of the trial court was harmful.

The judgment is affirmed.

In this opinion the other justices concurred.