[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Glastonbury Bank Trust Co., brought this action against the defendants, Petco Associates, Inc., and its partners, Lucius A. Pettingill, Jr. and Thomas P. Kane to foreclose first and second mortgages held by GBT on six lots owned by Petco and located on Acorn Ridge in Glastonbury, Connecticut. CT Page 774
On July 1, 1991, the parties stipulated that a judgment of strict foreclosure would enter in favor of GBT. The debt owing on the two mortgages was stipulated to be $967,312.12. None of the defendants having redeemed on the law day of July 2, 1991, title to the six Acorn Ridge lots vested in GBT on July 3, 1991.
By motion dated July 18, 1991, GBT seeks a deficiency judgment. Based on a preponderance of the evidence admitted at trial, the court finds the following facts proven: Petco is a Connecticut general partnership owned by two general partners, Pettingill and Kane. On or about January 27, 1989, Petco executed a promissory note in the amount of $700,000. payable to GBT. On the same day, Pettingill and Kane executed personal guaranties of the obligation. To secure the obligation, Petco executed a mortgage deed to Glastonbury property consisting of lots 1 through 7, Woodland Heights Subdivision.
On or about October 27, 1989, Petco executed a second note in the amount of $200,000. which was also guaranteed by Pettingill and Kane. The note was secured by a second mortgage on the property.
The balances owing on the notes as of July 3, 1991, the date of vesting of title, were as follows:
January 27, 1989 note:
Principal balance $700,000.
 Interest 83,990.29 ___________ Total $783,990.29
October 27, 1989 note:
 Principal balance $168,000.00 Interest 16,919.92 ___________ Total 184,919.92
As of July 3, 1991, the principal and interest due under both notes totalled $968,910.21. In addition, an attorney's fee in the amount of $2,000. was granted in connection with the original foreclosure judgment and costs were taxed in the amount of $4,078.50 for a grand total of $974,988.71.
Interest continues to accrue on any deficiency amount from July 3, 1991 at the effective rate specified in the note. CT Page 775 That interest rate was ten percent from July 3, 1991 to September 13, 1991. The rate was adjusted to nine and one-half percent on September 13, 1991 and to nine percent on November 6, 1991.
The plaintiff is also entitled to recover appraisal fees paid to Richard Barry in the amount of $3,750. and to Jo Broder in the amount of $4,000. less the amount already awarded as appraisal costs at the time of the original judgment, in the amount of $1,500. The issue of attorneys' fees was reserved by the parties until the determination of the deficiency amount.
Pettingill and Kane are partners in Petco, an entity that, in 1988, began preparing to acquire a 22.92 acre parcel of land off Woodland Street in South Glastonbury for the purpose of creating a residential subdivision. A subdivision plan was approved in the latter part of 1988. On January 27, 1989, GBT lent the sum of $700,000. to Petco to purchase the land and to pay, as well, the cost of subdivision improvements including engineering and road construction work. Prior to the loan, GBT obtained a preliminary appraisal from William Betts in the amount of $1,900,000. for the proposed Acorn Ridge lots.
During 1989, Petco proceeded with the acquisition and development of the subdivision which was completed late in 1989. On October 27, 1989, GBT extended a $200,000. line of credit for additional expenses.
On February 10, 1990, Petco sold Lot No. 4 for the sum of $275,000. None of the other six lots, all of which have been listed for sale with a realtor, have sold.
On July 2, 1990, William Betts appraised the six lots remaining (discounting for a projected sales period) at a value of $920,000. Because the amount then owing GBT was less than $900,000. Petco offered to deed the Acorn Ridge lots back to GBT in satisfaction of the debt, an offer which GBT refused for various reasons including the desire of GBT to resolve two other loan situations between GBT and business entities owned or controlled by Pettingill. The other loans were performing, not in default and adequately secured at that time, however.
Based on the testimony of Mrs. Jo Broder, an appraisal witness produced by GBT, whose opinion the court finds to be credible and substantiated, the court finds the value of the six lots to be $605,000 as of July 3, 1991.
As of the date of trial, some 94 lots in Glastonbury were listed on the Multiple Listing Service. In all, there were then between 850 and 1,300 approved but unimproved lots CT Page 776 for sale in Glastonbury. The absorption rate for lots in Glastonbury is approximately eight lots per month. The lots in question are located in a remote area of the town. There are available lots closer to the town facilities. There has been a steady decline in the price of lots in the present market. The house constructed on lot 4 does not enhance but, instead, decreases the value of the remaining lots because of the costliness (approximately $3,000,000.) of the house built on the lot.
Since the date of vesting of title in the plaintiff, the six lots have been offered for sale by a broker. Two contracts for sale resulted. One, for lot 6, called for a sale in the amount of $82,000. A sale occurred in that amount on October 31, 1991. The other contract, which has not yet resulted in a sale, was entered into on October 7, 1991 and provides for a sale of lot 7 for $82,000. Those lots are the smallest and least valuable lots in the subdivision.
The value of the property in question on the date of vesting of title determines the amount of any deficiency judgment to be entered by the court. Connecticut General Statutes, Section 49-14 provides that ". . .at such hearing, the Court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference,. if any, between such valuation and the plaintiff's claim. . ." In determining valuation, the court may adopt, but is not bound by, the opinions of the expert witnesses. New Haven Savings Bank v. West Haven Sound Development, 190 Conn. 60, 69-70 (1983).
The court heard the testimony of three appraisers, two called by the plaintiff, and one, by the defendant. The court has found the testimony of Mrs. Broder to be the most credible, based on the substance of her testimony as well as her qualifications. Based on that evidence, together with the testimony of Paul Depp, the court has found the value of the lots in question to be $605,000. The court rejects the appraisal opinion of Richard Barry which seems unreasonably low to the court as well as the testimony of the defendant's expert, William Betts, which does not take into account appropriately the market conditions. In addition, the court did not find credible the market value and absorption period employed by Mr. Betts. The court agrees with the plaintiff that Mr. Betts' values are unrealistic and excessive, given the market conditions at the present time.
It is noted that the defendant claims that the willingness of the defendant to reconvey the lots to Glastonbury Bank and Trust prior to July 3, 1991 precludes the CT Page 777 finding of a deficiency at this time. That claim has no merit. According to Bank of Boston Connecticut v. Winfried Platz, 3 Conn. L. Rptr. No. 17, 569 (April 22, 1991), which the court finds persuasive, the general rule is that both payment and tender of payment of the debt must be in money, unless the parties agree otherwise, or the obligee consents to accept some other medium of payment." supra at Page 570. "This rule applies to mortgage debts. A debtor has no right to deed the properties securing a debt to the creditor in settlement of a debt where a contract provides for payment in money." Supra at page 570. Based on the reasoning of that decision, the court rejects the defendants' claim pertaining to the offer of the lots.
The burden of proving a deficiency rests with the foreclosing creditor. Eichman v. J J Building Co., 216 Conn. 443,451 (1990). The court is satisfied that the plaintiff has satisfied that burden by a preponderance of the evidence.
Accordingly, the court concludes that the debt as of July 3, 1991 is $968,910.21 with costs amounting to $4,078.50 and attorneys fees of $2,000. Subtracting the value of the lots of $605,000. from the total of $974,988.71 leaves a deficiency of $369,988.71 to which the plaintiff is entitled by way of judgment. In addition, the plaintiff is entitled to interest at the rate provided in the note from July 3, 1991 to the date of judgment plus appraisal fees of $6,250. The matter of reasonable attorneys' fees will be determined by the court in a separate hearing upon plaintiff's claim.
Judgment is entered accordingly.
SCHALLER, J.