[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a foreclosure action wherein the Plaintiff, following a judgment of strict foreclosure, now seeks a deficiency judgment.
On November 25, 1987, Robert A. Caplan and A. Paul Spinella purchased this property for $156,900.00, and executed a mortgage in favor of the Plaintiff to secure a promissory note for $126,000.00. Robert A. Caplan quit-claimed his interest in this property, known as 451-453 Summit St., Hartford, Conn., to the Defendant, Patrick DeLucco, on January 26, 1990, and A. Paul Spinella quit-claimed his interest to the Defendant, Philip A. Spinella, on March 27, 1991.
On July 13, 1992, the Plaintiff obtained a judgment of strict foreclosure in this matter, and the Court set August 24, 1992 as the Law Day for the Defendants, Patrick DeLucco and Philip A. Spinella, owners of the equity of redemption. The judgment debt was found to be $139,023.96, plus an attorney's fee of $2,500.00, plus costs of $998.10, for a total of $142,522.06. The Defendants did not redeem, so title vested in the Plaintiff on August 28, 1992.
On February 19, 1993, this action came before the Court on the Plaintiff's Motion For Deficiency Judgment, to be determined as of August 28, 1992, the date title became absolute in the Plaintiff.
At the hearing on February 19, 1993, the Plaintiff presented Ray Lima, an appraiser who inspected the property on September 15, 1992, and who testified that its fair market value on August 28, 1992 was $110,000. Mr. Lima testified that his company had appraised the subject property at $155,000. on November 6, 1991, based on income, and that he took that appraisal into consideration when rendering his September 15, 1992 appraisal.
Mr. Lima testified that his appraisal figure was based primarily on a comparable sales approach, which was the most CT Page 3793 reliable method in this instance, and that two of the three comparable sales he used were bank sales. He said that bank sales provide a valid comparison because two-thirds of Hartford's sales are investor sales, which are similar to bank sales.
The average adjusted sales price of the three comparable sales used by Mr. Lima was $114,933. Mr. Lima attached the most weight to the lower end of the value range due to the slow market. One of the comparable sales was .35 of a mile from the subject property and closed on May 21, 1992; another was .4 of a mile away and closed on April 5, 1992; and the third was .25 of a mile away and closed on June 1, 1992. When comparing the comparable sales to the subject property, Mr. Lima made adjustments for significant variations. He inspected the comparables from the outside only, and used Multiple Listing data and City of Hartford field cards, both of which sources contain information about the inside and outside of houses. He does not know if he used 1980 or 1990 City cards. Mr. Lima's appraisal based on the income approach would have been $116,000., based on market rents rather than actual rents, because two of the three flats were occupied by people receiving Section 8 rental assistance. He testified that the number of people in Hartford receiving this assistance is so few (2.4%), it is very unlikely a landlord would be able to obtain a tenant with this subsidy, and that in this case Section 8 payments were higher than market rates.
The Defendant presented evidence from Peter Marsele, an appraiser who inspected the premises on November 21, 1992, and testified that the fair market value as of August 28, 1992 was $140,000.00. He used comparable sales only, although he considered and rejected the cost and income approach. None of the comparables used by Mr. Marsele were bank sales, because he believes that in general, bank sales are lower than fair market value, because they are not arm's length transactions with willing sellers and buyers who are not compelled to sell or buy. Mr. Marsele would not use bank sales unless no other sales were available. He testified that the comparable sales he used were in similar neighborhoods to the subject property, and that the subject property was assessed by the City of Hartford on the List of 1991 at $120,120.00. The three comparable sales used by Mr. Marsele were closed on August 18, 1992, July 1, 1992, and November 19, 1991; their average adjusted sales price was $141,667.00. Mr. Marsele did not inspect the interior of these CT Page 3794 comparable sales.
He further testified that the location of the subject property was conducive to its being rented to students from Trinity College. In addition, he stated that the State of Connecticut, Office of Policy and Management, records the selling price of houses in order to determine state education grants, but it does not consider those house sales in which a bank is the seller.
As a rebuttal witness the Plaintiff called Edward Reyngoudt, a Hartford real estate broker, who testified he listed the subject property on September 25, 1992, in order to market it for sale. He said he sent an information package on this property to people who he thought were potential buyers; that he advertised the property, placed it in the Multiple Listing Service, called known investors and potential buyers who had come to his office previously. He testified that he started marketing this property within a day or two of receiving the listing on September 25, 1992, at a price of $138,900.00; that he received about fifteen calls from September 25, 1992 to trial on February 19, 1993, none of which were from agents; that no one has asked to see the property and there have been no offers. The asking price was lowered on January 11, 1993 to $104,900.00, and lowered again to $99,900.00 on February 11, 1993. Mr. Reyngoudt stated that the average sales time in Hartford for similar property is more than six months.
In a proceeding on a Motion for Deficiency Judgment, the Plaintiff has the burden of proving the fair market value of the property as of the date the title vested in it. Eichman v. J and J Building Co., 216 Conn. 443, 445 (1990).
In determining valuation of this property, the Court is not bound by the opinion of expert witnesses. It can reject the appraisers' testimony in whole or in part regardless of its belief or non-belief of the subordinate facts relating to their opinions. New Haven Savings Bank v. West Haven Sound Development, 190 Conn. 60, 69, 70 (1983).
The Court has evaluated the above described evidence and the credibility of the various witnesses. The evidence is obviously sharply conflicting and the Court must weigh that evidence. Having done that, the Court finds that the fair market value of 451-453 Summit Street, Hartford, Conn., on CT Page 3795 August 28, 1992 was $120,000.00.
The Court has the authority to award an attorney's fee incurred in obtaining the deficiency judgment under City Savings Bank of Bridgeport v. Miko, 1 Conn. App. 30, 37 (1983). However, this authority is limited to a reasonable attorney's fee for services rendered in connection with the Motion for Deficiency Judgment.
A deficiency judgment may enter in favor of the Plaintiff in an amount consistent with this decision. The Court awards the Plaintiff legal fees in the amount of $2,500.00 and an appraiser's fee for appraisal and testimony in the amount of $600.00.
The Plaintiff should submit proposed orders for deficiency judgment setting forth the amount of the judgment and the calculations made in reaching that amount.
BY THE COURT,
Richard A. Walsh, J.
Next Page is 3799 CT Page 3799