[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Court held hearings over several days on this Motion for Deficiency Judgment dated February 10, 1992. The parties have filed extensive briefs after the close of the evidence on August 4, 1992. The defendant filed their brief on October 9, 1992 and the plaintiff filed its brief on October 14, 1992. CT Page 4398
Both parties agree that the court's function in this matter is to determine the fair market value of the property as of the date that title vested in the plaintiff.
Section 49-14 of the General Statutes requires that the party seeking a deficiency judgment must satisfy the burden of proof regarding the fair market value of the property as of the date title vests Eichman v. J J Building Co., 216 Conn. 443; Di Diego v. Zarro, 19 Conn. App. 291, 294, 562 A.2d 555 (1989).
A brief history of this case reveals that the mortgagee loaned $1,500,000.00 to defendant for the subject property for property valued at $2,142,857.00 in December 1988 (Defendant's Trial memo p. 42). On November 22, 1991 a judgment of strict foreclosure was entered without objection with a law day set for the defendant on January 25, 1992.[1]
In the foreclosure proceeding before Barnett, J., the court heard the testimony, of the defendants, appraisers, Robert Nocera and Walter J. Kloss, offered as experts in the instant motion. The plaintiff in this motion did not offer the same appraiser. The expert relied upon by the plaintiff was James Jerram.
 "Neither 49-14 nor any case examining it states that the finding of deficiency is based upon the difference between the debt and the value of the property on the date of the foreclosure . . . . It is the difference between the debt and the value on the date title vests in the mortgagee that triggers a finding of deficiency."
In Eichman, supra, 451 the Court stated a necessary element for a deficiency judgment, requires the plaintiff to prove that the property was worth less than the amount of the debt on the date of the vesting of title. The plaintiff had the burden of presenting sufficient evidence to determine value on the property.
In the present case both parties presented evidence for the court to conclude that the value of the property at the date title vested was less than the debt fixed at foreclosure proceedings or November 27, 1992. The debt previously found was $1,647,139.75 plus costs. CT Page 4399
The evidence adduced from the many days of testimony of the experts in this case and outlined in their respective briefs is as follows:
The plaintiff offered the testimony of James E. Jerram who stated the market value in his opinion as of January 29, 1992 is $1,000,000. [See Plaintiff's Exh. B]. The defendant offered conflicting testimony in the appraisal of Robert Nocera, $1,531,000. [Tr. 6/18/92] and Walter J. Kloss $1,600,000. [Defendant Exb. 30].
Mr. Nocera testified at the foreclosure that the property market value was $1,531,000. Mr. Nocera further testified that property values had bottomed and were in fact stable at this time. Mr. Nocera attributed his reduction in value based upon new lease information. The plaintiff asserts that the lease information is stale since many of the leases have expired. However the tenants in most instance remain on the property and are obligated to pay the same rentals. Mr. Jerram in the instant case failed to thoroughly investigate the rentals being paid in the downtown area of Naugatuck. Mr. Nocera asserts that the downtown property is attractive because of its location, accessibility by bus etc. and generally attracts professionals.
Mr. Nocera further states that his opinion of value of $1,575,000. was reduced to $1,531,000. because $44,000. is needed to make 2800 square feet of space rentable [Defendant's Exh. 11].
All three experts relied primarily upon the income capitalization approach for fair market value. The experts opinions are in substantial disagreement because the parties net rental per square foot of the subject premises differs.
Both experts Nocera and Kloss produced by the defendants used downtown properties as comparable property for their determination of rentals. Mr. Jerram used property outside the downtown area, more than two miles away.
Using the downtown properties for comparables is more appropriate to a finding of rental values. As in all cases certain areas have advantages and disadvantage but the use of similarly located properties is the better criteria.
The next area of difference underlying the opinions of the experts lies in the capitalization rate. The rate of 10% was CT Page 4400 used by the experts of the defendants whereas 11.5% was used by the plaintiff's expert. A capitalization rate is the return a reasonable investor would seek on his capital or equity he put into the property. Market value is determined by dividing annual net rentals received by the capitalization rate. New Haven Savings Bank v. West Haven Sound Development, 190 Conn. 60
(1983).
The rental figures used by the defendants' expert of $8.00 per square foot is based by the comparable properties; the Neary Building, and the Hopson Building located in the area. The plaintiff's experts failed to include these comparables in his analysis. The arguments presented by defendants in their post trial memorandum (pp. 9-17) is more persuasive in establishing the rentals per square foot used in arriving at a fair market value of the subject property. An appraiser's view of the capitalization rate is most usually an opinion of an appraiser who relies on his experience in evaluating how it relates to other properties.
The court agrees with the capitalization rate utilized by the defendants' experts based upon their experience with the market condition in the town of Naugatuck. The expenses utilized by the defendants in arriving at the net annual rentals are more credible.
Much time was spent upon the issue of parking. From all the evidence presented on parking, Mr. Nocera summarized the issue by stating that the town of Naugatuck is very generous with its parking to induce people to come to town. There are no meters in the downtown area. The court finds that ample parking was available.
An issue raised by the parties involved the usable space. The defendants' experts gave more credible testimony of the usable space in the building.
The weightier evidence lies in favor of the defendants in setting the fair market value of the property on January 25, 1992. The testimony of Mr. Nocera is of greater assistance to the court in fixing the value. Accordingly the court finds the fair market value as of the date that title vested in the plaintiffs to be $1,531,000.00.
The motion for deficiency is granted. The court reserves CT Page 4401 decision as to the amount of the deficiency.
Frank S. Meadow State Trial Referee