[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action seeking the foreclosure of a mortgage and a deficiency judgment and other relief was returned to court on April 27, 1993. The underlying debt was based on a promissory note dated April 17, 1989 in the amount of $520,600. As security the defendant executed a mortgage on seven condominium units in the Broadview Condominium, South Broad Street, Meriden, Connecticut. The units are known as S-206, S-105, N-202, N-109, S-201, S-215 and S-207.
The court defaulted all named defendants on June 17, 1993 and granted plaintiff's motion for strict foreclosure. In the judgment of strict foreclosure the court found the debt due plaintiff to be $527,027.89, allowed attorney's fees of $1,700.00, title search fee of $150.00. At this hearing the defendants offered no evidence of the value of the subject properties. Plaintiff's evidence permitted the court to find without opposition that the total value of the properties on July 17, 1993 was $325,000, based on the following individual values:
 S-105 — $37,500 S-207 — $45,000 S-201 — $51,000 N-109 — $37,500 S-215 — $45,000 S-202 — $51,000 S-206 — $58,000
The defendant expressly reserved her right to establish the fair market value of the subject property at any subsequent hearing requesting a deficiency judgment.
Plaintiff filed a bill of costs on June 29, 1993 without opposition.
The court set July 19, 1993 as the law date for the owners of equity with their permission. On July 22, 1993 title vested in the plaintiff following which on August 2, 1993 plaintiff moved for deficiency judgment.
The matter was referred to the undersigned for a hearing pursuant to 49-14 of the general statutes. The statute provides CT Page 10661 that "at such hearing the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim."
The valuation of the mortgaged premises on the date that title becomes vested in the mortgagee, rather than value of premises on date of foreclosure, determines whether mortgagee is entitled to a deficiency judgment. Di Diego v. Zarro, 19 Conn. App. 291,294 (1989). Accordingly the operative date in this instance is July 22, 1993. Furthermore, a party seeking a deficiency judgment following a judgment of strict foreclosure bears the burden of establishing the fair market value of the property in question as the date title vests in him. Eichman v. J. J. Building Co., 216 Conn. 443, 445 (1990). Eichman is also authority for the principle that the statute 49-14 does not impose an affirmative duty on the factfinder to determine the value of the property regardless of whether any credible evidence has been presented on which the factfinder could base that determination. Id. 454.
"The determination of [a property's] value by the court is the expression of the court's opinion aided ordinarily by the opinion of expert witnesses, and reached by weighing those opinions in light of all the circumstances in evidence bearing upon value and its general knowledge of the elements going to establish it. Citations omitted, Id. 451 "[T]he determination of the credibility of expert witnesses and the weight to be accorded their testimony is within the province of the trier of facts who is privileged to adopt whatever testimony he reasonably believes to be credible Id. "When confronted with conflicting evidence as to valuation the trier may properly conclude that under all the circumstances a compromise figure most accurately reflects fair market value." New Haven Savings Bank v. West Haven Sound Development, 190 Conn. 60, 80 (1983).
The court held a hearing on the motion for deficiency judgment. Testimony was offered by both the plaintiff and defendant relative to the fair market value of the seven condominium units on July 22, 1993 the date title vested in the plaintiff. The plaintiff's appraiser reoffered his appraisal which had been submitted to the court at the hearing on the motion for strict foreclosure. This appraisal indicated a fair market value as of that date of $325,000. Exh. A. CT Page 10662
The appraiser supplemented his testimony with four additional sales of units at the Broadview Condominiums, Exh. B. These sales took place between April 28, 1993 and July 20, 1993 and varied in price from $37,740 for a 1,094 square foot unit to $50,000 for a 1,205 square foot unit. These sales would suggest a square foot value of approximately $40.00. The appraiser concluded that on July 22, 1993 the fair market value of the seven units was $305,000.
The defendants' appraiser testified that the fair market value of the seven units on July 22, 1993 was $655,500. He submitted seven written appraisals Exhibits 1, 2, 3, 4, 5, 6 7. These appraisals all were dated January 8, 1993 with a value estimate as of January 4, 1993. In these appraisals values assigned were as follows:
 S-105 — 85,000 — 1,007 S.F. N-109 — 85,000 — 923 S.F. S-207 — 94,500 — 1,094 S.F. S-215 — 94,500 — 987 S.F. S-201 — 97,500 — 1,200 S.F. N-202 — 97,500 — 1,248 S.F. S-206 — 101,500 — 1,585 S.F.
These estimates would suggest a square foot value averaging $83.00 per square foot.
Both appraisers used the comparable sales approach to determine market value. Plaintiff undermined some of defendants' comparables on the, basis of recency — pointing out that 131 Natchaug Drive was sold 18 months prior to July 22, 1993; 42 Old Stage Crossing was sold 17 months prior; the Unit 2-1 Pine Meadow sale preceded the operative date by 18 months. The defendant's appraiser testified to other more contemporary sales in rebuttal. This testimony included:
Per S.F. 24 Woodley Court 1,000 S.F. Sold 6-7-93 — $ 82,000 = 82.00 236 Metacomet 1,200 S.F. Sold 6-17-93 — $ 92,000 = 77.00 204 Metacomet 1,200 S.F. Sold 5-26-93 — $ 90,000 = 75.00 88 Metacomet 1,200 S.F. Sold 8-6-93 — $103,000 = 86.00 85 Kent 750 S.F. Sold 7-30-93 = $ 65,000 = 86.00
These comparables also suggest a square foot value of about $81.00. CT Page 10663
The evidence would indicate that some of the plaintiff's comparable sale data do not reflect the precipitate drop in the value of condominiums in Meriden since the construction of subject properties in 1987 (Testimony of Robison, Plaintiff's V. Pres.) or the oversupply of condominiums in the area Exh. 1, 2, 3, 4, 5, 6 7. In addition the court finds density, location, setting, traffic and architectural layout of the Metacomet, Brighton Court and Natchaug comparables used by the plaintiff's appraiser are dissimilar to and superior to the subject property. The subject properties consist of 62 units located on Broad Street, a high traffic area, on a 1.66 acre plot: entries to these units are off common hallways. The court has already noted that the 131 Natchaug, 42 Old Stage Coach and Unit 2-1 Pine Meadow sales were completed more than 12 months prior to the vesting of title. These are factors the court must consider. That is not to say the information elicited by these comparables is beyond credibility. Rather the court must use a weighing process factoring in the elements which detract from their viable comparability.
Plaintiff's comparables shown in Exhibit A are subject to the same scrutiny. Plaintiff's comparables are divided into four groups based on the style and square footage. The appraiser used as comparables for the first three groups listings of one or more properties located in the Broadview Condominium ranging in the $40,000 to $54,000 range. In support of the opinion of fair market value on the date title vested plaintiff submitted four sales of properties sold at Broadview between April 1973 and July 1973. These sales would suggest that the square foot value of these properties is about $40.00. Analysis of these comparables specifically S-201 and S-215 indicates that the appraiser is mistaken about the identity of these properties. Both are part of the instant foreclosure process and since title did not vest until July 22, 1993 they could not have sold on July 20, 1993, and April 28, 1993 respectively as Exhibit B indicates.
All of the Broadview comparables used in Exhibit B and the Broadview comparables used in Exhibit A are suspect. These properties were acquired by plaintiff bank by foreclosure, deed or auction, they are properties falling in the OREO category (other real estate owned by the bank). The testimony of Mr. Robison, a bank vice president, indicated that the bank was and is determined to dispose of these properties quickly, in view of the bank's opinion of the parlous state of the condominium real estate market in Meriden; that the goal was to sell at least one property per CT Page 10664 month, in many cases taking back favorable mortgage. This goal was achieved in some instances by pricing the units far below the appraisal prices produced in the foreclosure acquisition process. The court concludes that these comparables do not meet the definition of market value in that a reasonable time is not being allowed for exposure in the open market and the price does not represent the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale. Exh. A.
Apart from these Broadview sales or listings both the plaintiff and the defendant submitted other credible but conflicting comparables. Giving consideration to all of the comparables submitted, the court concludes that a compromise figure of $50.00 per square foot most accurately reflects the fair market value of N-109 and S-105 on the date title vested July 22, 1993, that a compromise figure of $52.00 per square foot most accurately reflects the fair market value of N-207 and S-215 on the date title vested in plaintiff and that a compromise figure of $54.00 per square foot of living area most accurately reflects the fair market value of S-201, N-202 and S-206 on July 22, 1993. These square foot costs would generate the following units' fair market values.
 S-105 — 963 S.F. $48,150 N-109 — 875 S.F. $43,750 N-207 — 1,094 S.F. $56,888 S-215 — 987 S.F. $51,324 S-201 1,205 S.F. $65,070 N-202 — 1,248 S.F. $67,392 S-206 1,585 S.F. $85,590 ------- $418,164
Thus the fair market value of the subject properties on July 22, 1993 is $418,164. Since the debt due (Exhibit C) is
 $597,571.25, the deficiency debt is 418,164.00 ----------- $179,407.25 plus an attorney fee — $850.00 appraisal fee — 400.00
plus interest @ 10% from July 22, 1993 to November 19, 1993 on $179,407.25 or $5,830.74. A deficiency judgment of $186,487.99 CT Page 10665 may enter.
Dorsey, J. State Trial Referee