[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is the plaintiff's motion for deficiency judgment filed under General Statutes § 49-14. On August 19, 1994, a judgment of strict foreclosure entered in the matter with respect to a parcel of land located in Tolland and comprising around thirty-six acres of unimproved woodland. The defendant appealed from the judgment, and, on March 2, 1995, the judgment was affirmed, Loehr v. FRI Land,Equities, Inc., 37 Conn. App. 927 (1995). The case was remanded to the trial court for assignment of new law days, Id. On May 22, 1995, the trial court reset the law days, and title to the property vested in the plaintiff on June 15, 1995. On June 27, 1995, the plaintiff filed this motion for deficiency judgment, and on August 30 and 31, 1995, the court held an evidentiary hearing.
The amount of the debt is undisputed. The only dispute is as to the fair market value of the parcel on June 15, 1995, the date title vested in the plaintiff. As to this issue, the plaintiff introduced the testimony and report of a qualified land appraiser, Robert J. McKinney. He opined that the fair market value of the property on June 15, 1995, was $100,000. The defendant offered the testimony and report of another qualified land appraiser, Wallace Inkpen, who opined that the fair market value on that date was, $380,000.
The land in question, called the "Bentwood Ridge Subdivision," has been approved for subdivision into nineteen residential building lots. Although approved for subdivision, the parcel remains unimproved. It cannot be developed because it is effectively landlocked until another subdivision, Silbury Hill II, an adjoining parcel, is developed so that roads may be constructed to connect the lots of Bentwood Ridge to the highway system via the roadways constructed as a result of the development of Silbury Hill II. Until that construction in the adjacent subdivision occurs, Bentwood Ridge cannot be developed.
In arriving at their divergent opinions of the fair market value of the subject parcels both appraisers evaluated the land using the market, or comparable sales, approach to valuation, and the discounted cash flow analysis, which is a variation of the income approach. The court finds, regarding the market approach, that McKinney employed comparable sales which were more similar to the circumstances surrounding Bentwood Ridge than the sales selected for comparison by Inkpen. Those sales considered by Inkpen involved tracts of land which were much closer to full development than Bentwood Ridge is because of the inability to improve the subdivision until the adjacent subdivision is developed and the lots sold. The court finds that McKinney's examples more accurately corresponds to the contingencies of the subject property.
With respect to the discounted cash flow approach, a major CT Page 10451 discrepancy in valuation arises between the two experts because of differing estimates as to how rapidly the adjoining Silbury Hill II subdivision will sell out so that development of Bentwood Ridge may commence and reach completion. The discounted cash flow analysis involves projecting future expenses of development and future revenues generated as a result of the sale of lots. The predicted cash flows are compared, and a discount factor is applied to convert future cash flow considerations into a present value. Clearly, this analysis depends heavily on the "absorption time" needed to sell out the subdivision. A potential buyer or seller of the subdivision will be strongly influenced in arriving at a present purchase price by the length of time probably required for the development of the subdivision and sale of the lots as bearing on a return on investment.
Inkpen projects that the Bentwood Ridge subdivision will be developed and the lots sold in two years. After consideration of all the evidence adduced, the court finds this estimate to be unduly optimistic. This timetable is unrealistically short given the necessity of fully developing and selling lots from an adjacent subdivision before development of Bentwood Ridge can begin. McKinney, on the other hand, predicts a sellout period of six years. While this strikes the court as somewhat conservative, the court finds that this estimate is the more realistic timetable.
The court concludes, after consideration of all the evidence, that the fair market value of the parcel in question on June 15, 1995, was $190,000. The plaintiff has met his burden of proving that a deficiency exists, Eichman v. J J Building Co., 216 Conn. 443,451. (1990), and judgment is rendered as follows:
Amount of debt as of June 15, 1995 $248,507.55
Attorney's fees originally awarded 3,259.50
Costs of original judgment 896.20
 Add'l appraiser's fee for deficiency judgment motion 1,500.00
CT Page 10452
 Interest on deficiency ($247,287.15 — 190,000 = 57,287.15) @ 10% per annum for 83 days (6-15-95 to 9-6-95) 1,302.69 ----------- $ 255,465.94 Less value of property on 6-15-95 — 190,000.00 ----------- $ 65,465.94
The court enters judgment in favor of the plaintiff of $65,465.94 plus additional, reasonable attorney's fees to be determined upon proof thereof.
Sferrazza, J.