[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Judgment of strict foreclosure was entered by the court (Corradino,J.) on October 2, 2000. At that time, a debt was found in the amount of $24,846.08. In addition, counsel fees were awarded in the amount of $1,500.00, a title search fee was awarded in the amount of $250.00 and an appraiser's fee was awarded in the amount of $300.00. The Law Day established was November 13, 2000. CT Page 4058
As part of the same judgment of strict foreclosure, there was a fair market value of the property known as 81 Truman Street, New London, Connecticut, found by the court. That finding provided a land value in the amount of $2,270.00 and a value of $30,730.00 for the building. The total value found was $33,000.00. Those findings were based on an appraisal dated August 14, 2000 by F. Jerome Silverstein.
On December 11, 2000, a motion for deficiency judgment was filed. That motion recited the terms of the judgment of strict foreclosure as mentioned above, and also indicated that the property was subject to a first mortgage which had an unpaid balance of $31,689.45 as of November 29, 2000. That first mortgage was payable to Norwest Bank.
At the hearing with respect to the motion for deficiency judgment, plaintiff presented a Calculation of Deficiency Judgment dated February 20, 2001. In that calculation, there was a request for additional attorney's fees of $1,500.00 as well as additional appraisal fees of $800.00. Also, there was a request for interest accrued from October 2, 2000 which was presented as $1,391.38. There was no explanation as to how the interest was calculated. The plaintiff further submitted an appraisal of the subject property prepared by F. Jerome Silverstein, the same appraiser who provided the initial appraisal upon which the findings of the court were based at the time of the entry of the judgment of strict foreclosure. The appraisal was accompanied by the oath of the appraiser, which had been sworn to on February 2, 2001. That appraisal indicated that the fair market value of the property as of January 2, 2001 was $21,000.00. The appraisal report was received by the court, but no testimony was offered in support of the report.
During the course of the argument on the motion for deficiency judgment, the plaintiff, through counsel, indicated that the change in the value of the property from $33,000.00 to $21,000.00 was brought about by reason that in the initial appraisal the appraiser had been unable to enter into the building. In the course of the subsequent appraisal, when the appraiser entered into the building, his estimate was revised. It was also represented, that the second appraisal had been accepted by the court in the matter of Norwest Bank v. Andrew Lockwood, Docket No. CV00-0557136, Judicial District of New London, as the basis for the value of the property in that case, and that a judgment of strict foreclosure had entered in that file based upon the second appraised value.
At the outset, the court notes that the relevant date for valuation of a property in a strict foreclosure is the date on which the plaintiff obtains title and not the date on which the court enters a judgment of foreclosure. Di Diego v. Zarro, 19 Conn. App. 291 (1989). As a practical CT Page 4059 matter it is neither uncommon nor unusual that the value of the property might change between the date of judgment and the date of the vesting of title. It is the burden of the plaintiff to establish the value of the subject property in pursuit of their motion for a deficiency judgment.Eichman v. J J Building Company, 216 Conn. 443 (1990).
In this case, the court is troubled by the dramatic change between the value of the land as found on August 14, 2000 of $2,270.00, and the subsequent value of the land as found in January, 2001, of $10,000.00. There is no explanation contained within the second appraisal report to account for a difference of such magnitude. There is no claim made that the appraiser was unable to examine the land either on his initial or subsequent visit. Nor is there any claim that any event took place upon or near this property that would have changed the value of the land within a relatively short time between appraisals. That this land more than quadrupled in value is not adequately explained. Similarly, the value of the building changed from $30,730.00 in the initial appraisal to $11,000.00 in the subsequent appraisal. Again, an explanation is offered that the appraiser was not able to view the interior of the property during his initial visit. The report itself contains a notation that "the roof leaks in several locations, several new windows are needed and the interior walls need repairs." However, the initial appraisal report had already stated that the property was in "poor" condition.
In the appraiser's analysis, based on direct sales comparison in both appraisals, there are a total of six comparable properties listed. It is noteworthy that all of the comparable properties sold prior to the date of the initial report, thus presumably all available at the time of that report. In the initial report, after adjustment for sales condition and size, the appraiser concludes that the appropriate value is $22.00 per square foot. In the subsequent report, after the same adjustments, his conclusion is $14.00 per square foot.
The evidence offered by the plaintiff in support of his request for finding a value of the property is not persuasive. The reports submitted by the same expert witness relatively close in time are contradictory and not sufficiently reconciled.
"The determination of [a property's] value by a court is the expression of the court's opinion of expert witnesses, and reached by weighing those opinions in light of all the circumstances in evidence bearing upon value and its own general knowledge of the elements going to establish it. . . . [T]he determination of the credibility of expert witnesses and the weight to be accorded their testimony is within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible." Eichman v. J J BuildingCT Page 4060Company, supra, at 451-52 (citations omitted).
Based upon the evidence submitted, the court is unable to credit the report of the appraiser from January, 2001 indicating that the value of the property is $21,000.00. Accordingly, the court is unable to find a fair market value for the property as of the date the title has vested in the plaintiff and, therefore, denies the plaintiff's motion for deficiency judgment.
Robaina, J.