[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned mortgage foreclosure action came before this court for trial on the plaintiff's claim for a deficiency judgment. On August 30, 1993, a judgment of strict foreclosure was entered by the court, Lager, J., as to a parcel of land known as 249 Putnam Avenue in Hamden, Connecticut. That property had been mortgaged to secure a promissory note in the amount of $3,500,000 from defendant Delco Development Company, Inc. ("Delco") to Mechanics and Farmers Bank FSB. The note was guaranteed by defendants Gary R. Ginsberg, Robert A. Ginsburg, and Dennis Nicotra who agreed unconditionally to guarantee all obligations of Delco under the promissory note.
At the time of entry of the judgment of strict foreclosure on August 30, 1993, the court found the debt to be $4,698,506.95. Title passed to the foreclosing party on July 11, 1996. The hearing on the claim for deficiency was delayed by the defendants' unsuccessful appeal of the judgment, by discovery disputes and by difficulties in obtaining the presence of all parties at trial. CT Page 3398
Connecticut General Statutes § 49-14 provides that at a hearing on a motion seeking a deficiency judgment, "the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiffs for the difference, if any, between such valuation and the plaintiff's claim." The date of valuation is the date that title in the property vested in the party claiming the deficiency, in this case, July 11, 1996. See Eichman v. J J Building Co.,216 Conn. 443, 451 (1990). The party seeking a deficiency judgment has the burden of proving that the property was worth less than the amount of the debt on the date of the vesting of title and has the burden of presenting sufficient evidence for the trial court to determine the value of the property on that date. Id.; Silvav. Hartford, 141 Conn. 126, 129 (1954).
The defendants take the position that if the court does not find the appraisal presented by the plaintiff to be a valid indication of the value of the property, the motion for a deficiency must be denied.
In Eichman, the trial court found that neither appraiser's testimony was credible and that the tax assessor's calculation was also not credible. In the absence of any credible evidence of value, the court in that case concluded that the creditor had failed to prove that a deficiency existed. On appeal, the Supreme Court upheld the finding that no deficiency had been proven but distinguished the case from those in which the court "found segments of the presented evidence credible" and therefore concluded that "a compromise figure most accurately reflects fair market value." Eichman v. J J Building Co., 216 Conn. 452, citing Hartford Federal Savings Loan Ass'n. v. Tucker,196 Conn. 177, 183, cert. denied, 474 U.S. 920 (1985); New HavenSavings Bank v. West Haven Sound Development, 190 Conn. 60, 70
(1983); Bennett v. New Haven Redevelopment Agency, 148 Conn. 513,515-16 (1961).
The defendants imply that if the court fails to find the appraisal presented by the creditor to be a wholly reliable statement of the fair market value of the property, it must deny the claim for a deficiency. The ruling in Eichman does not require that result, and in CTB Ventures 55, Inc. v. Rubenstein,39 Conn. App. 684 (1995) the Appellate Court rejected such an interpretation. In CTB Ventures the trial court explicitly stated that it did not accept as the fair market value the figure testified to by the appraiser presented by the creditor but found CT Page 3399 a deficiency on the basis of other evidence of value specifically, the valuation of the debtor's appraiser. The Appellate Court found that the trial court properly exercised its discretion "to accept or reject any or all of the testimony of the opposing expert appraiser" and that its adoption of the value stated by the debtor's appraiser did "not require a conclusion that the plaintiff failed to present a prima facie case." CTBVentures 55, Inc. v. Rubenstein, 39 Conn. App. 684, 694. Similarly, the Appellate Court rejected in Farmers and MechanicsBank v. Kneller, 40 Conn. App. 115, 130 (1996) the claim that a trial judge who did not adopt the valuation of the creditor's appraiser should not have awarded a deficiency judgment. The Appellate Court noted that "[w]hen confronted with conflicting evidence as to valuation the trier may properly conclude that under all the circumstances a compromise figure most accurately reflects fair market value." Id., citing New Haven Savings Bankv. West Haven Sound Development, 190 Conn. 60, 70 (1983).
The property at issue was appraised on behalf of the plaintiff by Ramesh Singhal, a state certified appraiser. He described the property as a 10.55 acre tract of land that is undeveloped (except for the abandoned footings for a defunct condominium project) with 668.45 feet of frontage on Leeder Hill Drive and 417.66 feet of frontage on Putnam Avenue. The land is located in a Controlled Development District Zone (CDD-1). The plaintiff's appraiser noted that the uses permitted as of right in that zone are business and professional offices, retail stores, rooming and boarding houses, laboratories and manufacturing facilities. Other uses, for which a special permit is required in a CDD-1 zone, include nursing homes, managed residential care facilities, motels and multi-family residential developments.
Mr. Singhal indicated in his report that he was attempting to value the property as to its highest and best use, considering the following elements: the uses physically possible given the location and nature of the site, the uses permitted by zoning, the uses that are feasible in terms of profit, and, among the feasible uses, "which use will produce the highest net return or the highest present worth." (Exhibit A, p. 27). Mr. Singhal stated that "[b]ased on the location, zoning and current economy, the Highest and Best Use of the property will be development of industrial/manufacturing building(s), an office complex or multifamily/apartment houses." id. Mr. Singhal used the sales comparison approach to compare the property to properties that CT Page 3400 are comparable as to characteristics including such potential uses.
One of the comparison sales analyzed by the plaintiff's appraiser is a wooded parcel of undeveloped land on the other side of Leeder Hill Drive with the same zoning. That parcel, which was almost five acres, sold for $47,071 per acre in May 1994. A second comparable, a 4.38 acre parcel adjoining the subject land, and with the same zoning, sold for $51,369 per acre in July 1993. Other sale of raw land examined by Mr. Singhal involved much smaller tracts or tracts divided by a road.
The plaintiff's appraisal report contains the information that for real estate tax purposes the land was assessed at $434,210, representing seventy percent of valuation (that is $620,300) on the grand list of October 1, 1995.
The defendants presented two appraisers who appraised the property on the assumption, conveyed to them by their clients, that the highest and best use of the land was as an assisted living facility. Such a use is not a use permitted as of right in a CDD-1 zone. Rather, development for this use would require a special permit.
Both of the defendants' appraisers, Joseph F. Perrelli and Robert Royce, valued the property on the basis of the conclusion that its highest and best use is as a site for an assisted living facility with not less than 404 units. The court finds that this designation of highest and best use was not the product of the appraisers' independent analysis but was a conclusion strongly urged by their clients, who supplied them with a consultant's letter indicating that the consultant believed that "we can easily put 404 assisted living units on this parcel." The consultant was not presented as a witness, and neither appraiser was able to support the assumption, adopted by both, as to the number of assisted living units possible.
Mr. Perrelli purported to appraise the subject property on a sales comparison approach, however his comparison included only one actual sale, a 23.28 acre parcel that was part of a 136 acre parcel approved for 1394 units of housing plus a sixty bed medical center. That sale occurred on August 5, 1991 and included land close to the subject site in Hamden. The other "comparable sales" analyzed by Mr. Perrelli were not in fact sales but only contracts containing various contingency clauses. Comparable #2 CT Page 3401 was a transaction contingent upon receipt of approvals for proposed development as a 100-unit assisted living facility in Hamden. The contract price was reported to be $1,000,000, contingent on approval of 100 units. The transaction identified by Mr. Perrelli as "comparable #3" was a contract dated June 1, 1995 that related to land in the town of Orange. The appraiser conceded that the housing plan that was a contingency in the contract was rejected by the town, which favored a housing development in another location, and the sale contemplated in the contract did not occur.
Robert Royce, the other appraiser presented by the defendants, likewise employed a sales comparison appraisal but relied on sales of land in Rocky Hill, Fairfield, Canton and downtown Stamford. The only comparable he identified in the same town as the subject was not a sale but a contract concerning a tract of land on Whitney Avenue. Mr. Royce testified that the son of the prospective buyer had told him that the 5.45 acres property was approved for 100 units for assisted living and that the number of units required a variance "under the new zoning regulations for assisted living." (Exhibit 4, p. 22). Those regulations were not presented into evidence by the defendants.
The plaintiff's appraiser's report indicates that Hamden had a population of 52,130 as of 1993. The reports reveal that the immediate locale of the subject property is already home to 347 units of subsidized housing for the elderly and 204 units of "life care" facilities for the elderly. Other assisted living facilities exist in the New Haven area close to Hamden. If the information concerning the prospective sales is accurate, any development of the subject land as an assisted living site would be several years behind similar projects already approved for nearby locations in the same town.
This court does not find it plausible that every parcel of vacant land in Hamden with non-preclusive zoning use must be valued as a site for an assisted living facility. While there is a prospect that the site might be a possible location for another assisted living facility, such a prospect is not the only evidence to be taken into account on the issue of valuation.
The defendants assert that the court has no basis for finding a deficiency because Mr. Singhal did not determine a single "highest and best use" for the property. While such a determination may be part of the approach to valuation adopted by CT Page 3402 appraisers, it is not a statutorily-required standard. Conn. Gen. Stat. § 49-14 (a) requires a court to "hear the evidence, establish a valuation for the mortgaged property and . . . render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim." The statute thus does not specify "highest and best use" as a standard for valuation. As the Appellate Court ruled recently in Farmers and MechanicsBank v. Kneller, 40 Conn. App. 115, 129 (1996), citing Eichman v.J J Building Co., 216 Conn. 451-52,
 [t]he determination of [a property's] value by a court is the expression of the court's opinion aided ordinarily by the opinions of expert witnesses, and reached by weighing these opinions in light of all the circumstances in evidence bearing upon value and its own general knowledge of the elements going to establish it.
The Appellate Court observed that the weight to be accorded the testimony of expert witnesses is within the province of the trier of facts, "who is privileged to adopt whatever testimony he reasonably believes to be credible" [emphasis in original],Farmers Mechanics Bank v. Kneller, 40 Conn. App. 130.
While Mr. Singhal's broad application of the consideration of highest and best use, rather than the assumption of a very particular but perhaps narrow market as to a very specific, specialized use, was criticized by the defendants' appraisers, the court does not find that it constituted so total a departure from the standards of appraisal as to render his evidence totally without weight. Moreover, the court has been furnished with evidence concerning the value of property on the same street and same environs as the subject property and information about other sales of somewhat similar land. The court does not find credible the defendant's appraiser's valuation based on land in distant locations where the market was not shown to be the same either for raw land or for the kind of development advocated by the defendants.
This court finds most convincing on the issue of the value of the subject land the sales prices of raw land in the same area. In the case of a sale of 4.78 acres on 170 Leeder Hill Road in mid-1994, the sale price was $47,071 per acre. A tract of approximately 4.38 acres in the Leeder Hill Road/Putnam Avenue locale sold in mid-1993 for $51,369 per acre. A sale in 1991 of the last parcel of some 33 acres in an assemblage of a much CT Page 3403 larger parcel for 1,394 units of housing with a medical center, reflected a cost of $197,594 per acre, however that price would seem to reflect the fact that the price was part of a large project, and the defendants' appraiser did not present evidence that would enable the court to determine whether or not the buyer had to pay a premium to a "hold out" seller in assembling the site. At best, the defendants have presented evidence to the effect that buyers are willing to pay $200,000 per acre if a contingency of approval for projects for elderly housing/assisted living facilities can be obtained. They have not shown that raw land in Hamden is worth such a price per acre absent the fulfillment of such contingencies.
The defendants urge the court to determine value based in part on a per acre cost land not actually sold but only under contract. The court finds that the data provided by the defendant is unreliable. A glaring example is their reliance on a contract for the sale of property at 1450 Whitney Avenue in Hamden. One of their appraisers, Mr. Royce, reports the contract price as $1,200,000 for 5.45 acres. The defendants' other appraiser identifies the same property as having a contract price of $1,000,000 per acre (Exhibit J, Comparable 2). The fact of the matter was that no actual sale had taken place, so that the most reasonable conclusion is that this land was not, ultimately, worth $200,000 or more per acre since no willing buyer has actually been found for it at that price. That site is, moreover, much more attractive for residential development of any kind than the subject site, which is in a mixed industrial/residential area.
The actual sales mentioned above took place before the apparently profitable use of land for new kinds of developments for the elderly was a possibility and the court finds that the potential for such development has an enhancing effect on the value of sizeable tracts of raw land in appropriate locations. Since the subject land is in an appropriate though not optimal location, its value should reflect this potential, however there is no credible basis to assure that a particular number of units would be authorized. The history of the transaction concerning the Whitney Avenue property included a failed effort to increase an approval from 60 to 100 units, though the reasons for this outcome were not presented.
Based on the credible evidence and logical inferences that flow from it, the court finds that the value of the property on CT Page 3404 the date title vested was $70,000 per acre, or $738,500.00.
Conclusion
The plaintiff has filed a Statement in Support of Motion for Deficiency Judgment reflecting a stipulation that post judgment interest be applied at the rate of eight percent. The court, Lager, J., has previously found the per diem interest to be $777.7778. Interest at that per diem rate is awarded to the date of this ruling. The plaintiff claims real estate taxes paid since 1989 in the amount of $102,545.25. The court finds that these taxes related to periods before the plaintiff took title. The plaintiff presented credible evidence that such amounts were paid by the plaintiff. While the defendants assert that this amount was included in the prior calculation of the debt, Judge Lager's memorandum of decision does not so indicate, so this amount is properly added in calculating the deficiency.
The court finds that the plaintiff may recover $1,350.00 as the appraiser's fee. Though the plaintiff seeks in its Statement an additional award of counsel fees, it has not presented evidence on that issue.
The court finds that the deficiency as of March 14, 1997 (including an additional $66,888.89 in interest for the eighty-six days from December 19, 1996 to March 14, 1997), is $5,821,927.70. Deducting the valuation of $738,500.00, the court finds the deficiency to be $5,083,427.70.
Judgment
Judgment shall enter against the defendant Delco Development Co. Inc. and the defendant guarantors, Robert A. Ginsburg, Gary Ginsberg and Dennis Nicotra in the amount of $5,083,427.70 plus any court costs not previously taxed.
Beverly J. Hodgson Judge of the Superior Court