[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR DEFICIENCY JUDGMENT (#123)
CT Page 13210
The plaintiff, Connecticut Commercial Land Corp.[1], timely moved for a deficiency judgment against the defendant Elizabeth C. Adinolfi, individually and as executrix of the Estate of Joseph Adinolfi, Jr., deceased. For the reasons that follow, the motion for a deficiency judgment is denied.
 I. FACTUAL AND PROCEDURAL HISTORY
Joseph Adinolfi, Jr., the decedent, his wife Elizabeth C. Adinolfi, and their three daughters, Diane Gent, Pamela O'Keefe and Tracy E. Adinolfi, executed and delivered to the plaintiff, a mortgage note in the principal amount of $3.5 million, secured by a mortgage on an office building known as 90 Washington Street, Hartford, CT (Property). As of the date of the mortgage transaction, August 19, 1986, the mortgaged property was valued in excess of $5 million. The mortgage note went into default after Mr. Adinolfi's death, and the plaintiff, on October 9, 1996, instituted the underlying action solely upon the note against the defendants Mrs. Adinolfi, individually and as executrix of his estate and the three daughters.[2]
Some time after the defendant advised the plaintiffs counsel that she was prepared to expedite the vesting of title and the entry of a judgment of strict foreclosure, or, offer a deed to the property, the plaintiff amended its complaint seeking a foreclosure. Promptly thereafter, a judgment of strict foreclosure was entered in accordance with the parties' stipulation. Title to the property duly vested in the plaintiff on January 7, 1999.
The court held a hearing on this motion for a deficiency judgment during which the parties introduced testimony and documentary materials into evidence, and the court, by agreement of the parties viewed the property. The parties also submitted posttrial briefs.
The issues in dispute concern the value of the property and the defendant's claim that the plaintiffs inequitable conduct resulted in excessive interest charges, which should be excluded from the mortgage debt. Additionally, the defendant claimed the admission of a certain appraisal report, (Exhibit A for identification) upon which the court deferred ruling. CT Page 13211
 II. DISCUSSION A. Evidentiary Issue
The defendant subpoenaed Rachel Gioia, a certified real estate appraiser, who made an appraisal of the property as of June 17, 1996 at the plaintiffs request, in anticipation of this litigation. The defendant then offered Gioia's testimony and appraisal report into evidence, not to prove the value of the property, but to impeach the testimony of the plaintiffs appraiser, Christopher A. Italia. The plaintiff, relying on FirstFederal Bank, FSB v. Gallup, 51 Conn. App. 39, 719 A.2d 923
(1998), objected on the ground of relevance, claiming that the only issue before the court was the value of the property on the title vesting date, January 7, 1999.
The Gallup court held that it was reversible error in a deficiency judgment proceeding for the trial court to rely on appraisals of property values 15 months before and 7 months after the title vesting date, stating that the untimely appraisals were irrelevant to the value of the subject property on the title vesting date.
Although the defendant's true purpose is obviously to place before the court a value of the property higher than the bank's appraiser testified to, and perhaps gain an inference that the plaintiff was "appraiser shopping," she seeks to distinguishGallup, supra, by claiming to offer the Gioia appraisal solely to impeach Italia's testimony. This claim, however, has no merit, as there was no evidence whatsoever that Italia relied in any way on the Gioia appraisal, its methodology, findings, comparables, or analyses, in formulating his conclusion and opinion. Therefore, the court excludes Exhibit A for identification for lack of relevance.
B. Value of the Property
1. Italia Appraisal
The plaintiff introduced into evidence the testimony and report of Christopher A. Italia, a certified real estate appraiser, who inspected the property and analyzed its value, first in July, 1998 and again, as of January 7, 1999. He opined that its value as of the title vesting date was $895,000, relying on his sales comparison approach valuation of $920,000 and income CT Page 13212 approach valuation of $870,000.
The property comprises approximately 1.5 acres, with a four story, elevatored office building of 83,600 square feet, (net usable leasing area of approximately 80,000 sq. ft.) and is properly zoned for general and professional office use, and other business services although it may not conform to current zoning requirements. The property has on site capacity for 110 parking spaces, has air conditioning and a sprinkler system, and all utilities and is in good condition and habitable, but requires some cosmetic work to be ready for tenants.
Italia relied on five `comparable sales' in his use of the sales comparison analysis. I conclude that none of his `comparables' are in actuality comparable to the foreclosed property, and are therefore inapposite. I reach this conclusion for a number of reasons.
First, several were foreclosed properties transferred by quitclaim deed. One, comparable No. 3, was by tax auction, and although closest in location from the subject (diagonally across the street) was an uninhabitable, almost derelict building disparate in configuration from the property, and with no off-street parking, although such parking was acquired later.
Second, `comparables' 1, 2 and 3 are substantially smaller then the subject property. Nos. 4 and 5 are similar in size, but No. 4 is much older and in poor condition requiring substantial rehabilitation, while No. 5 is located a substantial distance away in an inferior location.
Third, with the possible exception of No. 5, the other comparable sales were not true market sales or arm's length transactions between willing buyers and sellers.
Fourth, Italia designated the property as Class C with no logical basis, despite its overall good condition, ambience, and fairly recent renovation, which justify B classification.
Moreover, several other inconsistencies in Italia's comparable sales analysis, and the overall subjective flavor of his opinion compels the court to reject, in toto, his opinion of value based on his comparable sales approach.
His income approach valuation of $870,000 is likewise CT Page 13213 seriously flawed. He used a ten-year discounted cash flow analysis, based on hypothetical ten-year leases. However, all of the comparable state and other leases he relied upon were for five years, some with options. Other assumptions he made, which were integral to his opinion, were speculative and troubling to this court; most importantly, his conclusion that substantial capital expenditures would be required to ready the building for a tenant, which he envisioned to be the State of Connecticut, as the most appropriate or hypothetical best use. The state had been a tenant of the entire building under a lease which expired in 1996, and the property has been vacant since.
Italia's opinion was that a sum in excess of $1.1 million[3] would be needed for such improvements, including new roofing and mechanicals. I find no credible basis for this opinion. Moreover, his income approach also assumed a negative cash flow in excess of $1.3 million over the first two years of tenant occupancy, exclusive of debt service. This analysis posits that an investor would pay $895,000 for the building, invest in excess of $1.1 million for improvements and endure a negative cash flow in excess of $1.3 million over a two-year period, all to own a building worth $895,000. To state this opinion, refutes it.
Other deficiencies in his analysis included his capitalization rate, and his failure to properly adjust the property costs for utilities and real estate taxes.
These factors, together with his inappropriate `comparable sales', and largely subjective adjustments thereto, cast grave doubt upon his entire valuation, and the court rejects his $895,000 valuation of the property.
2. The Nocera Appraisal
The defendant introduced the testimony and report of Robert J. Nocera, a certified real estate appraiser, who opined that the property was worth $3.4 million based on a sales comparison approach of $2.88 — $3.2 million, and an income approach of $3.475 million.
Nocera described five `comparable sales' that he relied upon and a sixth sale which he used "for informational purposes" only. Of Nocera's `comparables' none were the size of the subject building (save the sixth), nor were any located in its CT Page 13214 neighborhood. One was three times as large, another more than twice the size, the other three ranged from 1/5 to 3/4 the size. Two of the `comparables' were much older; two had ample on-site parking, three had limited or no parking.
Nocera candidly conceded that his `comparables' "have limited direct comparability to the property and have required significant subjectivity in relating each to the subject."
Although Nocera's sale No. 6 appeared, at first blush, to have substantial similarity to the property, in terms of location, parking availability, building size, use and condition, Nocera did not use it in his analysis because it was an older sale, circa July, 1995, when it sold for a price of $2.8 million. Accordingly, the court does not consider it.
Turning to Nocera's principal comparable sales, I conclude, likewise with those of the plaintiffs appraiser, that none are appropriate comparables. All but one require significant, large percentage adjustments, ranging from 20 percent to 60 percent to equate to the property. Comparable No. 2, 3 Constitution Plaza, which had a net total adjustment of 10% was not adjusted for its substantially smaller gross building area (62,553 s.f.) smaller lot size (.55 acre), or for its limited on-site parking capability.
Accordingly, I conclude that I must reject Nocera's valuation of the property at $2.88 — $3.2 million based on the sales comparison approach.
I also reject Nocera's income approach valuation for the property of $3.475 million as not credible. Although I agree with the basic methodology Nocera used in arriving at this valuation, several of his assumptions are highly speculative and cast doubt on his final conclusion.
First and foremost, Nocera posits a buyer who would make a down payment of approximately $1 million, and obtain a mortgage of approximately $2.4 million to purchase the property for $3.4 million. Nocera's analysis further assumes that the property will be fully leased over a two-year period, which would entail a negative cash flow of approximately $900,000 during the first two years of ownership, under the rosiest of circumstances. Moreover, he assumes the building would be leased fully in a two to two and one-half year period. In this regard, he notes that the building CT Page 13215 has been vacant for eighteen months before the title vesting date.
Nocera also envisions continued improvement in Hartford's office market vacancy rate over the years of his discounted cash flow analysis, and cites a report, relied upon by him for general market outlook, as predicting an overall office vacancy rate reducing to 16% by the year 2000. Despite this prediction, he uses an even more optimistic 10% vacancy rate in his analysis.
For the foregoing reasons, Nocera's opinion of value of $3.4 million as a blend of both approaches lacks credibility, and the court rejects it.
III. LAW
General Statutes § 49-14 (a) provides in pertinent part that "any party to a mortgage foreclosure may file a motion seeking a deficiency judgment." At the hearing on the motion, "the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiffs' claim. Such a deficiency judgment, in light of §49-1, is, therefore, the only available means of satisfying a mortgage debt when the security is inadequate to make the foreclosing plaintiff whole. The value of the premises on the date that title becomes vested in the mortgagee determines whether the mortgagee is entitled to a deficiency judgment." (citations omitted; internal quotation marks omitted.) Eichman v.J. J. Building Co., 216 Conn. 443, 449, 582 A.2d 182 (1990).
Although § 49-14 (a) provides that the trial "court shall hear evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the deficiency if any, [between the mortgage debt and valuation] . . .", our Supreme Court held in Eichman, that a trial court does not have a mandatory duty to determine a valuation of foreclosed property in the course of a deficiency judgment proceeding when there is insufficient evidence to support such determination.
In a deficiency judgment proceeding the burden of proof is on the plaintiff to show that the property was worth less than the amount of the debt on the date of vesting of title in the plaintiff. CT Page 13216
Since the plaintiff has the burden of proof, it was incumbent upon it to present sufficient and credible evidence to the trial court on the issue of value, to enable the trial court to make such a determination. Simply put, even taken together with the testimony of the defendant's appraiser, the plaintiff failed to meet its burden of proof.
"The determination of(a property's) value by a court is the expression of the court's opinion aided ordinarily by the opinions of expert witnesses, and reached by weighing those opinions in light of all the circumstances in evidence bearing upon value and its own general knowledge of the elements going to establish it. The determination of the credibility of expert witnesses and the weight to be accorded their testimony is within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible. When confronted with conflicting evidence as to valuation the trier may properly conclude that under all the circumstances a compromise figure most accurately reflects fair market value." (citations omitted; internal quotation marks omitted.) Eichman v.J.J. Building Co., supra, 216 Conn. 451-452.
This is not a case where the court, even when aided by a view of the premises, confronted by greatly disparate expert valuations, which relied upon inappropriate `comparable' sales, widely divergent and speculative assumptions, and seriously flawed income approach analyses, may arrive at a compromise figure, which, with reasonable accuracy, approximates the fair market value of the subject property. Because the court cannot arrive at a determination of the fair market value of the property on the evidence presented, the plaintiffs motion for a deficiency judgment must fail.
 CONCLUSION
In sum, the plaintiff failed to present sufficient credible evidence with which to determine the value of the property, and has not met its burden of proof.
In view of the court's conclusion it is unnecessary to consider the defendant's claim relating to excessive interest charges.
Accordingly, for the reasons stated, the plaintiffs motion for a deficiency judgment is denied. No costs are taxed to either CT Page 13217 party.
Teller, J.